HALL v. UNION PAC. R. CO. See Cases Nos. 16,599–16,601.

HALL (UNITED STATES v.). See Cases Nos. 15,281–15,285.

## Case No. 5,951.

### HALL v. WAGER et al.

[3 Biss. 28;[1] 5 West. Jur. 538; 5 N. B. R. 181; 3 Chi. Leg. News, 401.]

Circuit Court, W. D. Wisconsin. June Term, 1871.[2]

INSOLVENCY — A CONDITION OF FACT, NOT OF BELIEF — CONSTRUCTION OF ACTS OF INSOLVENT — INSOLVENCY CONSTRUED ACCORDING TO PLACE — ACTUAL BELIEF BY CREDITOR OF INSOLVENCY NOT NECESSARY — WHAT CONSTITUTES INSOLVENCY.

1. To render a mortgage void under the thirty-fifth section of the bankrupt act [of 1867 (14 Stat. 534)]. it is not necessary that the debtor knew or believed himself insolvent. The section treats of insolvency as a condition of fact, not of belief, and with knowledge of which and its consequences he is chargeable in law.

[Approved in Curran v. Munger, Case No. 3,487.]

[See note at end of case.]

2. It follows, as a logical sequence, that when a man insolvent in fact gives a mortgage to one existing creditor he does so with a view to give him a preference.

3. The bankrupt law of 1841 [5 Stat. 440] and the Massachusetts insolvent law and decisions commented upon.

4. The act of 1841 declares void preferences made by a party contemplating bankruptcy; the act of 1867 includes those made by a party being insolvent, and the decisions under the former act are not always applicable to the present statute.

[See note at end of case.]

5. The purpose of the act being to enforce the equal distribution of the estate, every act of an insolvent that tends to defeat that purpose should be construed strictly as against him, and courts should indulge every presumption permissible by the well settled rules of law to secure the full benefit of this cardinal principle of the law.

6. The strict definition of insolvency usually given in commercial centers should not be applied in country places. A party should be held insolvent only when he fails to meet his debts according to the usages and customs of the place of his business—the rule should be in harmony with the general custom of the place.

7. If an insolvent give a mortgage to a creditor who has reasonable cause to believe him insolvent, the fraud upon the bankrupt act is complete as to both.

[Cited in Michaels v. Post, 21 Wall. (88 U. S.) 398.]

[See note at end of case.]

8. The question as to the creditor is whether he "had reasonable cause to believe" the debtor insolvent—not what he did believe; the latter is immaterial. The creditor is not constituted the sole judge of the sufficiency of the evidence of his debtor's insolvency—that is for the court to determine, the security being attacked.

[Cited in Michaels v. Post, 21 Wall. (88 U. S.) 398; Merchants' Nat. Bank v. Cook, 95 U. S. 342.]

9. Where a debtor had, during two years paid off only a small portion of an overdue debt, had sold out the stock of goods for which the account was made, and transferred a part of the paper received therefor, had applied for extensions and been refused, had previously declined to execute a mortgage on the ground that it

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

[2] [Affirmed in 16 Wall. (83 U. S.) 584.]

would injure his credit, and had been pressed by his different creditors—these facts constitute reasonable cause for belief of insolvency, and the creditor cannot escape from the consequences of knowledge of them.

[Cited in Burpee v. First Nat. Bank of Janesville, Case No. 2,185.]

This was a suit in equity brought by Augustus O. Hall, assignee of Leonard Lakin, bankrupt, to set aside a mortgage given by the bankrupt to the defendants Wager & Fales, on the ground that it was void under the bankrupt act. The mortgage was for $3,000, dated December 15th, 1869, and was given to secure a debt of that amount owing by Lakin to the firm of Wager & Fales for balance due for stoves sold by them in 1867. The stoves were originally sold on four months time, and the debt had been for some time past due before the giving of this mortgage. Five notes for $600 each were then executed, made payable in six, twelve, sixteen, twenty, and twenty-four months respectively, with interest at 10 per cent. The account against the bankrupt was in 1867 about $4,000, and he paid in 1868 about $500, and in July, 1869, $200 more. In February, 1868, he asked for an extension, agreeing to make small payments, but no extension was formally given. In March, 1869, he asked for another extension, but none was given. In July, 1869, the defendants sent their agents to him for settlement, and asked for a mortgage to secure the balance due. He declined then to give it, and wrote defendants, July 9th, 1869, that if he gave a mortgage it would injure his credit. He agreed then to make small remittances, but did not do so, and they, in October, 1869, sent their claim to Richardson, their agent at Janesville, to get it secured by mortgage, and on the 15th of December, through him, they obtained the mortgage in question. In 1868 Lakin built a new store, at a cost of from $6,000 to $8,000, and in the same year sold out his stock of stoves, and gave up the stove business, continuing, however, to do business as a retail hardware merchant with a reasonably fair credit at home, and with his creditors; but he had not met his payments, and owed on the 15th of December about $14,000 or $15,000 [$1,400 or $1,500][3] past due, a portion of which had been due for some time, but part of which [Pierce and Whaling's claim][3] he had secured by a note given by the purchasers of the stoves. He had been harassed for over a year by his creditors, had been borrowing money, obtaining renewals, and had used in his business funds held by him as treasurer and in trust. In August, 1869, he gave a mortgage to secure his father-in-law $3,200 borrowed money.

Finches, Lynde & Miller, for complainant.

Cassoday & Merrill, for defendants, cited In re Hunt [Case No. 6,881]; Potter v. Coggeshall [Id. 11,322]; Babbitt v. Walbrun [Id. 694]; Bean v. Brookmire [Id. 1,168]; Maurer

[3] [From 5 N. B. R. 181.]

v. Frantz [8 Phila. 505]; Sedgwick v. Place [Case No. 12,622]; Langley v. Perry [Id. 8,067]; In re Gay [Id. 5,279]; In re Locke [Id. 8,439]; Armstrong v. Rickey [Id. 546]; Wright v. Filley [Id. 18,077]; Jones v. Howland, 8 Metc. [Mass.] 377; Morgan v. Mastick [Case No. 9,803]; Doan v. Compton [Id. 3,940]; In re Gregg [Id. 5,797]; Wadsworth v. Tyler [Id. 17,032]; Lee v. Franklin Avenue German Sav. Inst. [Id. 8,188].

HOPKINS, District Judge. Mr Lakin was, beyond all question, I think, insolvent, and had been so for over two years when he gave the mortgage to defendants, although he swears he did not suppose he was, but, on the contrary, he thought he was worth $10,000 over and above all his debts. Soon after giving the mortgage, his other creditors instituted an investigation into his affairs, and it was made apparent that he was insolvent. He then attempted to compromise, but failed to accomplish it; and on the 8th of January, 1870, twenty-four days after giving this mortgage, he filed his petition in bankruptcy.

Mr. Mack, of Sandusky, Ohio, swears that Wager told him in November, 1867, that he thought Lakin insolvent, and that he intended to send out and get a mortgage to secure his claim. Wager denies that he said so, but says that Mack told him at that time that he (Mack) thought he would not stand it long; but that he told him he knew better, and that he was good, and Mr. Wager is partially sustained in his version by a Mr. Spencer, who was present. The defendants swear that they considered him worth $10,000 or $15,000 over his debts when they took the mortgage. The defendants' counsel claim that the facts, as proved, fail entirely to make out a case under the bankrupt act, and contend that to avoid the mortgage it must be shown that Lakin was insolvent when he gave the mortgage, and that he knew it; for if he did not know that he was insolvent he could not be said to have given the mortgage with a view to give the mortgagees a preference, which it would be necessary for the court to find as a question of fact under the thirty-fifth section of the bankrupt act, in order to avoid the mortgage.

The meaning of that part of the section is not entirely clear, and has been construed differently by the courts and judges who have been called upon to pass upon it. But I cannot concur with the defendants' counsel in their interpretation of it. The section does not require the debtor to know his insolvency, or to believe it. It treats of insolvency as a condition of fact, not of belief. He cannot set up his ignorance of that condition to defeat the operation of that section. He is presumed to know, and is chargeable with knowledge of it, and neither ignorance nor willful blindness will exonerate him from the operation of its provisions, so that, being insolvent in fact, and chargeable by law with knowledge of such condition, it would follow, it seems to

me, as a logical sequence that he gave the mortgage with a view to give the defendants a preference. For not having property to pay all his creditors, the giving the defendants security to pay them in full necessarily operated as a preference, and he should be held as having intended the rational and logical consequences of his acts. This section of the bankrupt act is almost a literal copy of section 89 of the Massachusetts insolvent law, and their court before its adoption by congress had placed this construction upon it. Perhaps if the bankrupt had any reasonable cause to believe himself solvent, it might be held that he did not give the security with intent to give a preference. But treated as a rational man, and looking at the facts of his case as they really were, could Lakin reasonably have believed he was solvent? A case might arise in which a court might hold that a party had reasonable cause to believe himself solvent, when he was in fact insolvent, but it would have to possess some peculiar features, and the party would have to furnish a very satisfactory excuse for want of a knowledge of the fact showing his insolvency. This does not present such a case. From the facts of this case it does not seem possible that he could have believed himself solvent when he gave this mortgage. The case of Jones v. Howland, 8 Metc. [Mass.] 377, relied upon so strenuously by defendants' counsel, arose under the bankrupt act of 1841, and the supreme court of Massachusetts has not followed that as applicable to their insolvent law, from which this section of the bankrupt act of 1867 under consideration was copied. Chief Justice Shaw, in delivering the opinion of that court in Holbrook v. Jackson, 7 Cush. 136, says: "The provision of the bankrupt law of the United States under which the case of Jones v. Howland was decided was very different from the present; it turned on the question of actual belief and intent, and not on reasonable ground to believe." And in the same opinion (page 149) he says: "We do not think it necessary, in order to avoid the conveyance, that the debtors knew they were insolvent, or in fact contemplated proceedings in insolvency; it is enough that they were in fact insolvent, and had no reasonable ground to believe themselves solvent." That court again in Vennard v. McConnell, 11 Allen, 562, says: "The proposition cannot be maintained consistently with the established rules of law that the payment of a debt by a party who is insolvent cannot be regarded as a preference, if made with the hope and expectation by the debtor that he will be able eventually to pay all his debts in full. The adjudicated cases leave no room for doubt on this point. Thompson v. Thompson, 4 Cush. 127; Lee v. Kilburn, 3 Gray, 594; Holbrook v. Jackson, 7 Cush. 136, 149; Barnard v. Crosby, 6 Allen, 327." And in Beals v. Clark, 13 Gray, 21, the court says: "The jury were rightly instructed that it was competent for them to infer from the fact that

Clark did give a preference to the plaintiff, that he intended to give it. Denny v. Dana, 2 Cush. 72." These cases abundantly show that the courts of Massachusetts have not regarded the case of Jones v. Howland, supra, as giving a construction of their insolvent law, and I am satisfied that the United States courts which have adopted that interpretation as a proper construction of the provisions of our present bankrupt act have not examined the provisions of the two bankrupt acts critically, nor the insolvent law of Massachusetts and the construction given to their section in regard to preferences by the courts of that state, for if they had they would at once have seen that the provisions of the act of 1841, under which that was given, were entirely different from the present act, and that that decision had uniformly been held there as not applicable to the provisions of their insolvent law.

The weight of authority in the federal courts, I think, is largely in favor of the construction I have given to that section. Campbell v. Traders' Nat. Bank [Case No. 2,370]; Scammon v. Cole [Id. 12,433]; In re Kingsbury [Id. 7,816]; Graham v. Stark [Id. 5,676]; Ahl v. Thorner [Id. 103]; Vogle v. Lathrop [Id. 16,985]; In re Black [Id. 1,457]; Bradshaw v. Klein [Id. 1,790]. The preferences declared void by the second section of the act of 1841 were such as were made by a party contemplating becoming a bankrupt under the act. There the intent of the debtor was the principal question. Under the present act a preference created by a party "being insolvent" is made void, and his intent or belief is not a question. The fact of insolvency being established or admitted, the preference ordinarily as to the debtor is presumed to be void—the presumption being strong or slight according to the circumstance of each case.

But I cannot see that the fact that the debtor knew or did not know of his insolvency at the time of creating the preference has much to do in determining the question as to him. The purpose of the act being to enforce the equal distribution of an insolvent's estate, every act of an insolvent that tends to defeat that purpose should be construed strictly as against him, and courts should indulge every presumption that is permissible according to well settled rules of law to secure the full benefit of this cardinal principle of the law. I would not go so far as to prevent the exercise of a reasonable bona fide effort on the part of an energetic and hopeful debtor struggling with an honest intent to pay all his debts, for it is often the case that a trader may be embarrassed and unable to pay his debts as they mature, but by the exercise of judgment and unreserved frankness with his creditors goes through, pays all, and converts what was almost a calamity into a profitable enterprise. But to allow every embarrassed debtor to thus go on and sustain his acts because he says he thought he could go through, and hold as valid his

payments and securities, would be to defeat altogether the object and provision of the bankrupt act.

I would not apply the strict definition of insolvency that is usually given in commercial centers to traders doing business in smaller country places. In large commercial centers a failure to meet payments as they become due is deemed insolvency, but not so in the country. The custom of traders generally is different there, and a party should be held insolvent there only when he fails to meet his debts according to the usage and custom of the place of his business. But this laxity should not be allowed to that extent as to hold that non-payment for a long time, or continued inability for years to pay and meet obligations should not be regarded as evidence of insolvency. I would not do away with all rule on that subject, but I would adopt a rule in harmony with the general custom of the place in which the party was engaged in business. And testing Lakin even by that rule, I hold that he must be deemed to have been insolvent when he gave this mortgage. He had been behind in his payments for over two years. His business for that time did not yield him the money to pay up. He was urged for payment and could not pay, applied for extensions which were refused, or if given he failed to meet according to the new terms, used trust funds in his business, borrowed money at banks and of his neighbors and clerks, and still was behind a great way in meeting his payments. To say, under such circumstances, that he should not be deemed insolvent, or that he had reasonable cause to believe himself solvent, would be indulging a laxity of business conduct and judgment entirely inconsistent with the views of business men in any community, and such as were never sanctioned by any court. To allow him any benefit of his plea of ignorance of his true condition under the circumstances of this case would do violence to his common intelligence and impeach his business ability to an extent far more damaging to him than to say that he hoped by some fortunate turn of business to get out of his embarrassed situation. I therefore find in this case that Lakin, when he gave this mortgage to the defendants was insolvent, and that he had no reasonable cause to believe himself solvent, that it was given to secure an existing debt, that it gave the defendants a preference over his other creditors, and that in law he should be held to have given it with a view to give them such preference. But in order to grant the relief sought by this bill it is necessary that I should find that the defendants, when they received such mortgage, had reasonable cause to believe that Lakin was insolvent, and that it was made in fraud of the provisions of the bankrupt act. This last proposition, it seems to me, is a necessary conclusion from an affirmative finding upon the facts. If an in-

solvent debtor gives a mortgage to one of his creditors, whereby he gives him a preference over his other creditors, and the creditor receiving the security has reasonable cause to believe the debtor insolvent when he receives it, the fraud upon the act as to both is complete, and the last proposition, as I have said, is but a logical conclusion rather than an independent fact or proposition necessary to be found in addition to the others, except as it naturally flows therefrom.

Chief Justice Shaw in Holbrook v. Jackson, supra (page 151), says: "It must be reasonable cause on the part of the mortgagee to believe—not actual knowledge or actual belief—that he (the mortgagor) was insolvent." The section itself declares that having reasonable cause to believe—not believing—so that the question is, had they reasonable cause. Viewed in this light, the question as to what they did believe about his condition is immaterial, for if they had reasonable cause to believe he was insolvent, their security was void. They could not close their eyes to the evidence of his insolvency that they had before them. Nor are they constituted the sole judges of the sufficiency of such evidence. That is for the courts to determine when the security is attacked.

Now, in this case I think defendants had reasonable cause to believe Lakin insolvent when they received the mortgage. This is the most difficult question, under the testimony, to decide, but I think, in view of all the facts and circumstances, they had reasonable cause so to believe. This debt was over two years past due. He had been in business all the time, but had only paid in the two preceding years about $700 upon it; had sold out the stock of goods for which the account was made; had transferred a part of the paper received on that sale as collateral security to other of his creditors; had repeatedly applied for extensions which had been refused; had been repeatedly dunned without success; refused in July previous to give them a mortgage as a condition of an extension; wrote them that he thought such mortgage would injure his credit; was told by Mr. Mack in November, at Sandusky, Ohio, that he thought he could not go through. These circumstances constitute, in my mind, a reasonable cause for them to have believed he was insolvent.

I have said before that such facts were evidence of insolvency, and that the law would pronounce a man thus situated an insolvent. These facts were known to them, and I cannot see any way of escape for them from the consequences of such knowledge. They refused all extension without ample security, and insisted upon it, notwithstanding his remonstrance that it would injure his credit. That was sufficient of itself to put them on inquiry. His fear about his credit should have put them upon inquiry as to the situation of it and the necessity for it. But they wholly neglected to investigate, were intent

on security, purposely ignorant and blind, or intending to be, of his circumstances until after they got the security. The giving of the security resulted as he thought it would. It caused an investigation into his affairs by his other creditors, which developed his insolvency, as Lakin must have known all the while it would, and as I think the defendants also had reason to think it would. Again, their agent was at Broadhead in June, 1867, at a time when among the more prominent public and business men of the village his credit was freely canvassed in connection with the defalcation as to trust money, and it is scarcely credible that he could have been there at that time and not heard anything about it, when he had so large a claim and so long past due. I therefore think the defendants had reasonable cause to believe Lakin insolvent when they received this mortgage from him, and that the giving of it was a fraud upon the bankrupt act, and that it is void; and I direct a decree declaring it void, and requiring the defendants to cancel the same upon the records, and if they fail to do so for a period of thirty days from the entering of the decree in this case, that then the register of deeds for Green county, upon recording a copy of the decree in this case, enter upon the records thereof this mortgage canceled by decree of the circuit court of the United States for the Western district of Wisconsin, and that the complainant recover his costs of the defendants, to be taxed.

I do not think this court, in this suit, should exclude the defendants from proving their debt; at all events, I do not feel disposed to pass upon that question in this case. The objection may be taken in the bankrupt court if the creditors wish to exclude the claim of these defendants from participation in the distribution, and that court may allow or reject the claim, as it may see fit, without reference to the result of this suit.

NOTE. For cases of preference, decided since the above opinion, consult In re Lord [Case No. 8,503]; In re Hunt [Id. 6,882]; Darby v. Lucas [Id. 3,572]; Sedgwick v. Millward [Id. 12,618]; Cookinham v. Morgan [Id. 3,183]; Sawyer v. Turpin [Id. 12,410]; Toof v. Martin [13 Wall. (80 U. S.) 40]; Curran v. Munger [Case No. 3,487]; Bingham v. Richmond [Id. 1,415]; In re Forsyth [Id. 4,948]; Warren v. Tenth Nat. Bank [Id. 17,202]; Warren v. Delaware, L. & W. R. R. Co. [Id. 17,194]; Buchanan v. Smith [16 Wall. (83 U. S.) 277]; Tiffany v. Lucas [15 Wall. (82 U. S.) 410]; Gilbert v. Priest [65 Barb. 444]; Seaver v. Spink [65 Ill. 441]; Hyde v. Sontag [Case No. 6,974]; Bean v. Amsink [Id. 1,167].

[This case was, on appeal, affirmed by the supreme court. Mr. Justice Clifford, in delivering the opinion, said: "Three things must be proved, in order to bring the transaction within the prohibition of the bankrupt act: (1) That the preference was made within four months before the filing of the petition in bankruptcy. (2) That the person giving the preference was insolvent, or in contemplation of insolvency, at the time the preference was made. (3) That the person benefited had reasonable cause to believe that the one making the pref-erence was insolvent when the preference was secured, and that it was made in fraud of the bankrupt act." 16 Wall. (83 U. S.) 584.]